UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

JULIANNE M. F.,           )
                          )
        Plaintiff    )
                          )
v.                        )      No. 1:18-cv-00469-GZS
                          )
ANDREW M. SAUL,           )
Commissioner of Social Security,[1] )
                          )
        Defendant    )

### REPORT AND RECOMMENDED DECISION[2]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing past relevant work as an office clerk or, in the alternative, performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the basis, *inter alia*, that the ALJ erred in relying on the opinions of two agency nonexamining consultants who did not have the benefit of review of later-submitted material evidence. *See* Statement of Specific Errors ("Statement of Errors") (ECF No. 11) at 1-13. I agree and, accordingly, recommend that the court vacate the commissioner's decision and remand this case for further proceedings consistent herewith. I need not and do not reach the plaintiff's remaining points of error.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the defendant in this matter.
[2] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through March 31, 2020, Finding 1, Record at 15; that she had the severe impairment of lumbar spine degenerative disc disease, status post discectomy, Finding 3, *id.*; that she had the residual functional capacity ("RFC") to perform a range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), including that she could lift/carry 20 pounds occasionally and 10 pounds frequently, sit for six hours total in an eight-hour workday, and stand/walk for six hours total in an eight-hour workday, although she could not climb ladders/ropes/scaffolds, could occasionally climb ramps/stairs, stoop, kneel, crouch, crawl, and balance, needed to avoid unprotected heights, operating heavy machinery or vibrating tools, and wet/uneven surfaces, and needed to be permitted to change positions every 30 minutes for five minutes, remaining on-task, Finding 5, *id.* at 16; that she was capable of performing past relevant work as an office clerk, which did not require the performance of work-related activities precluded by her RFC, Finding 6, *id.* at 19; in the alternative, considering her age (40 years old, defined as a younger individual, on her alleged disability onset date, April 21, 2015), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, *id.* at 20-21; and, that she, therefore, had not been disabled from April 21, 2015, her alleged onset date of disability, through the date of the decision, January 17, 2018, Finding 7, *id.* at 21. The Appeals Council declined to review the decision, *id.* at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. §§ 404.1520(f), 416.920(f); Social Security Ruling 82-62 ("SSR 82-62"), reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 813.

In the alternative, the ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Yuckert*, 482 U.S. at 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

The plaintiff alleges disability commencing on April 21, 2015, as a result of severe back pain both predating and postdating a September 8, 2015, surgery (a right L5-S1 microdiscectomy) performed by neurosurgeon Rodney A. Rozario, M.D., after an MRI demonstrated a right L5-S1 disc herniation. *See* Statement of Errors at 4-5; Record at 360, 580.

In assessing the plaintiff's physical RFC, the ALJ gave "great weight" to the opinions of agency nonexamining consultants Archibald Green, D.O., dated February 26, 2016, and Arvind Chopra, M.D., dated October 14, 2016. *Id*. at 19, 89-91, 120-22. Dr. Green explained that the "MER [medical evidence of record] does not support the level of disability alleged by [plaintiff] on AFF [Adult Functioning Form][,]" noting that medical evidence "from 2/2/16 states that back is improving, pain is better." *Id*. at 89. Dr Chopra explained:

> Review of medical evidence in file documents c/o [complaints of] low back pain with radiation down the right leg. HNP [Herniated [N]ucleus [P]ulposus] noted on diagnostic imaging. s/p [Status-post] discectomy. *Reports improvement in symptoms*. Noted to have painful ROM [range of motion] with stiffness, painful SLR [Straight Leg Raise], no weakness, healed scar.
>
> Based on ME [the medical evidence] currently in file, PFC [physical functional capacity] signed by Archibald Green, D.O., dated 2/26/16 is reasonable and reaffirmed as written.

*Id*. at 122 (emphasis added).

The ALJ adopted the Green/Chopra limitations, *compare* Finding 5, *id*. at 16 *with id*. at 89-91, 120-22, explaining:

> While the undersigned notes that these opinions are from non-examining and non-treating expert sources, they are not inconsistent with the medical evidence as a whole. These doctors agreed, after a thorough analysis of the evidence, that the [plaintiff] would be able to perform light level work, with the aforementioned limitations. As their opinion is consistent with the evidence of record, including evidence received at the hearing level, it is accorded great weight.

*Id*. at 19.[3]

The plaintiff contends that the ALJ's reliance on both the Green and Chopra opinions was misplaced because, contrary to his finding quoted above, neither Dr. Green nor Dr. Chopra had the benefit of review of material, later-submitted evidence. *See* Statement of Errors at 7-10. She

---

[3] The ALJ also assessed limitations beyond those set forth by Drs. Green and Chopra. *Compare* Finding 5, Record at 16 *with id*. at 89-91, 120-22. Those have no bearing on the resolution of the instant point of error.

adds that his reliance on the Chopra opinion was further misplaced because Dr. Chopra overlooked material evidence available for his review. *See id*. at 4-6. As a result, she argues, the ALJ's RFC determination is unsupported by substantial evidence, undermining his findings, at Step 4, that she could perform past relevant work and, at Step 5, that she could perform other work existing in substantial numbers in the national economy. *See id*. at 14.

As the commissioner correctly notes, *see* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 14) at 8, an ALJ, as a layperson, "is perfectly competent to resolve conflicts in expert opinion evidence regarding RFC by, *inter alia,* judging whether later submitted evidence is material[,]" *Anderson v. Astrue*, No. 1:11-cv-476-DBH, 2012 WL 5256294, at *4 (D. Me. Sept. 27, 2012) (rec. dec., *aff'd* Oct. 23, 2012), *aff'd*, No. 13-1001 (1st Cir. 2013).

Yet, a separate question remains whether any such finding is supported by substantial evidence. As the plaintiff observes, *see* Statement of Errors at 3-4, "the amount of weight that can properly be given the conclusions of non-testifying, non-examining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert. In some cases, written reports submitted by non-testifying, non-examining physicians cannot alone constitute substantial evidence, although this is not an ironclad rule[,]" *Rose v. Shalala*, 34 F.3d 13, 18 (1st Cir.1994) (citations and internal quotation marks omitted).

"[T]here is no bright-line test of when reliance on a nonexamining expert consultant is permissible in determining a claimant's physical or mental RFC." *Patrick M. v. Saul*, Docket No. 1:18-cv-497-NT, 2019 WL 3997260, at *3 (D. Me. Aug. 23, 2019) (citation and internal quotation marks omitted). "However, courts in this Circuit have found that an ALJ may rely on a non-examining expert's opinion that is based on older records if the older evidence remains accurate, including where (1) there are not direct contradictions between the reports, such that the newer

5

evidence is essentially cumulative of the older evidence, or (2) the newer reports show some measure of improvement in the claimant's condition." *Id*. (citations and internal quotation marks omitted).

At oral argument, the plaintiff's counsel conceded that Dr. Green reasonably characterized the most recent medical record available to him, a February 2, 2016, note of primary care provider Tzafra Tessier, PA-C, as showing "that back is improving, pain is better." Record at 89; Note of PA-C Tessier dated Feb. 2, 2016 ("2/2/16 Tessier Note") (ECF No. 11-1), attached to Statement of Errors, at Page ID # 680.[4] However, he contended, as argued in his client's statement of errors, that all subsequent records, including those available to Dr. Chopra, demonstrated deterioration in the plaintiff's back condition. *See* Statement of Errors at 4-10. He asserted, and counsel for the commissioner did not dispute, that Dr. Chopra relied on the same February 2, 2016, record as Dr. Green for the proposition that the plaintiff's back pain symptoms had improved.

Counsel for the commissioner, nonetheless, noted that Dr. Chopra referenced three records bearing on the plaintiff's back pain that were unseen by Dr. Green: a March 2, 2016, notation of "back pain[,]" Record at 111, an April 6, 2016, notation of "back pain" with findings on physical examination of "gait antalgic, slow to rise out of squat[,]" *id*., and a June 17, 2016, notation of findings on physical examination of "lumbar spine tender, R L5-S1 above coccyx, stiff, antalgic gait noted," *id*. He observed that, although the plaintiff reported on June 17, 2016, that "low back pain [wa]s now going into her right hip[,]" "[p]ain [wa]s starting to shoot down her leg again[,]" and she was "having [the] same symptoms she did before her surgery[,]" *id*. at 494, PA-C Tessier described her in the same note as "[d]oing well on [a] Lidocaine patch" with respect to her back

---

[4] The commissioner does not dispute that the 2/2/16 Tessier Note was omitted from the record or that it is the note to which Dr. Green referred. *See* Opposition at 5-6 & n.4.

6

pain, *id*. at 495. On the other hand, PA-C Tessier ultimately assessed her lumbar back pain as "[d]eteriorated." *Id*. at 496.

While the court cannot substitute its judgment for that of a medical expert, Dr. Chopra did not reconcile his reliance on the 2/2/16 Tessier Note indicating improvement in the plaintiff's back pain with the three subsequent records he referenced that seemingly indicated the converse. Nonetheless, I need not consider whether this point, alone, would warrant remand because I agree with the plaintiff's larger point that the ALJ erred in concluding that evidence unseen by either Dr. Green or Dr. Chopra was consistent with their assessments.

The ALJ summarized the medical evidence unseen by Drs. Green and Chopra that bore on the plaintiff's back impairment as follows:

> Notably, a January 2017 MRI of the [plaintiff]'s spine reflects a stable condition with minimal changes since her back surgery of August 2015 (16F). A neurological consult from February 2017 shows [the plaintiff] had "moderate" discomfort but no acute distress. Her strength, sensation and reflexes were normal, despite her positive SLR's [Straight Leg Raise tests] (17F at 2). The doctor recommended spinal column stimulation with a potential implant (Id.). She no longer had radiating pain to her legs and no motor weakness (17F at 4).

*Id*. at 18.

Nonetheless, the January 2017 MRI reflects post-surgical changes that, combined with the plaintiff's subjective complaints and objective findings on examination, call into question whether she retained the ability to perform light work as found by Drs. Green and Chopra.

The plaintiff underwent a post-surgical MRI on November 18, 2015, that radiologist Iftikhar Ahmad, M.D., interpreted as follows:

1. No residual disk. Specifically, no residual extruded disk in central and right central location at L5-S1.

2. Near-complete resolution of the compression on the right S1 nerve root after surgery. Post-op changes and enhancing fibrosis extending along the root entry zone of right S1 nerve root.

7

*Id*.

With the benefit of review of that MRI, PA-C Tessier concluded, in her February 2, 2016, note relied on by Drs. Green and Chopra, "Had recent MRI 11/2015, everything look[s] fine, mild scar tissue noted. Back stiffness; Denies bladder and bowel difficulties." 2/2/16 Tessier Note at Page ID # 678. She assessed the plaintiff's herniated lumbar disc as "[i]mproved[,]" noting: "Back pain improved – continues to f/u [follow up] with ortho[.]" *Id*. at Page ID # 680. She noted that the plaintiff had been prescribed Gabapentin for back pain and instructed her to "increase Gabapentin as tolerated" for pain. *Id.* at Page ID ## 680-81.

However, in the months that followed, the plaintiff reported experiencing pain in her back, hip, and leg, predominantly on the right side of her body. *See*, *e.g.*, Record at 495 (June 17, 2016), 500 (April 6, 2016), 534 (September 19, 2016).

On January 12, 2017, approximately three months after Dr. Chopra's assessment, the plaintiff complained to Dr. Rozario that she "had a fall and sustained significant pain going down to the back into both lower extremities." *Id*. at 585. On examination, Dr. Rozario noted that "[s]traight leg raising does produce discomfort involving the low back and both lower extremities, worse on the right than the left." *Id*. He, therefore, ordered "a repeat lumbar MRI scan" to determine whether there was "any evidence of recurrent disk herniation." *Id*.

That MRI, performed on January 25, 2017, was interpreted by Dr. Ahmad as follows:

1. Stable lumbar spine examination, except a new small right lateral disk protrusion, which causes slightly progressive, mild to moderate right L5-S1 neural foraminal stenosis since comparison study [on November 18, 2015].

2. Persistent, small expected postsurgical reaction fibrosis in the right lateral recess, which extends around the right S1 nerve root for a short distance; however, no compression on the right S1 nerve root on current examination is present.

*Id*. at 575. The plaintiff followed up with Dr. Rozario on February 6, 2017. *See id*. at 583-84. He characterized the MRI as showing "[p]ostoperative changes at the L5-S1 level on the right side[,]" stating:

> [The MRI] does not show any clear symptoms of a re-herniated disc at this point and certainly at this junction [the plaintiff's] symptoms consist of low back pain extending into both hips. Does not have the pain going down the right lower extremity that she had preoperatively. She has been to Pain Management. She has had three epidural injections without any benefit. . . . At this junction, straight leg raising produces discomfort in both lower extremities. Straight leg raising on the left producing discomfort into the right posterior hip area. Sensation is intact to pin.

*Id*. at 583. Dr. Rozario added that, because "the possibility of a reoperation actually producing any significant benefit cannot really be guaranteed at this junction[,]" he was reluctant to recommend such a procedure but considered it "worthwhile for her to obtain a second opinion[.]" *Id*. He concluded: "At this junction, I do think that, based upon [the plaintiff's] limitation of her ability to function, she has applied for Disability, I believe this hearing is in process and certainly based upon her limitations, I would think this would be a reasonable consideration." *Id*.

On referral from Dr. Rozario, *see id*., the plaintiff saw neurosurgeon Tobias A. Mattei, M.D., on February 24, 2017, *see id*. at 580. Dr. Mattei described the 2017 MRI as revealing not only "postoperative changes at the level of L5-S1" but also "some scar tissue adjacent to the right S1 nerve root with some local contrast enhancing" albeit "no evidence of a new re-herniation." *Id*. at 581. He further observed that the MRI revealed "advanced endplate changes with Modic type 2 changes especially in the anterior portion of both L5-S1 endplates." *Id*. He noted that, on physical examination, the plaintiff "seem[ed] to be in moderate discomfort but in no acute distress[,]" with some tender points "suggestive for facet mediated pain." *Id*. He concluded that the plaintiff "presented with a very challenging condition with chronic axial low back pain as well as persistent right S1 radiculopathy and that, although she "ha[d] already tried extensive

9

conservative treatment" and reported that "both her back pain as well as her leg pain ha[d] been significantly impairing her quality of life[,]" the MRI findings did not indicate a need for neurosurgical intervention, which "might lead to further worsening of her neuropathic symptoms and possibly even weakness in her foot." *Id*. Accordingly, he "strongly recommended" that, if the plaintiff "believe[d] she need[ed] further treatment, . . . she consider the option of dorsal column stimulation." *Id.*[5]

In sum, following the initial postsurgical 2015 MRI and PA-C Tessier's February 2, 2016, notation of improvement, (i) the plaintiff continued to complain of back pain, sometimes radiating into her hips and lower extremities, despite ongoing treatment, (ii) treating sources continued to record positive Straight Leg Raise tests on examination, and (iii) the 2017 MRI demonstrated additional postsurgical changes beyond those noted in the 2015 MRI report that was available to Drs. Green and Chopra. This, in turn, called into question the findings of Drs. Green and Chopra that the plaintiff retained the capacity to perform the demands of light work, including lifting and/or carrying up to 20 pounds occasionally and 10 pounds frequently, standing and/or walking for about six hours in an eight-hour workday, and sitting for about six hours in an eight-hour workday, with unlimited ability to push and/or pull (including operation of hand and/or foot

---

[5] The plaintiff contends that, "[w]hile Dr. Rozario's office note at Exhibit 17F, page 4 (Tr. 583), does indicate that the [she] was not experiencing pain radiating down the right leg, this appears to be a clerical error and contrary to all o[th]er evidence." Statement of Errors at 9. She points out that "[i]n the very same note Dr. Rozario stated, '[a]t this junction, straight leg raising produces discomfort in both lower extremities.'" *Id*. (quoting Record at 583). As the commissioner rejoins, *see* Opposition at 11, it is not clear that this is a clerical error. Nonetheless, as the plaintiff observes, *see* Statement of Errors at 9, and her counsel emphasized at oral argument, Dr. Rozario noted on January 12, 2017, that she complained of "significant pain going down to the back into both lower extremities[,]" finding on examination that "[s]traight leg raising does produce discomfort involving the low back and both lower extremities, worse on the right than on the left[,]" Record at 585, and Dr. Mattei noted on February 24, 2017, that she reported that she "persisted with right leg pain" and had "intermittent pain in the left leg," finding on examination that she had "positive straight leg raise rest on the right side with pain radiating to the right S1 dermatome[,]" *id*. at 580-81. Thus, while the ALJ correctly noted that Dr. Rozario indicated on February 6, 2017, that the plaintiff "no longer had radiating pain to her legs[,]" *id*. at 18, records unseen by Drs. Green and Chopra do indicate that the plaintiff continued to complain of pain radiating into one or both lower extremities.

controls) other than as shown for lifting and/or carrying. *See* Record at 90, 120, 122; 20 C.F.R. §§ 404.1567(b), 416.967(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls.").[6]

While the ALJ also relied on the plaintiff's activities of daily living in determining the plaintiff's RFC, *see* Record at 18-19, such activities, "standing alone, do not constitute substantial evidence of a capacity to undertake full-time remunerative employment[.]" *Rucker v. Colvin*, Civil No. 2:13-CV-218-DBH, 2014 WL 1870731, at *7 (D. Me. May 8, 2014) (citations omitted).

The ALJ's RFC finding, accordingly, is unsupported by substantial evidence. That, in turn, undermined his reliance at Steps 4 and 5 on the testimony of a vocational expert that a person with the stated RFC could perform either the plaintiff's past relevant work as an office clerk or, in the alternative, work existing in significant numbers in the national economy. *See* Record at 19-21; *Arocho v. Sec'y of Health & Human Servs.*, 670 F.2d 374, 375 (1st Cir. 1982) (responses of a vocational expert are relevant only to the extent offered in response to hypothetical questions that correspond to the medical evidence of record).

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **VACATED**, and the case **REMANDED** for further proceedings consistent herewith.

### *NOTICE*

---

[6] While, in *Anderson,* this court held that remand was not required when an ALJ relied on the opinions of agency nonexamining consultants who had not had "the benefit of review of the reports, records, and/or opinions of treating sources" postdating their opinions, *Anderson*, 2012 WL 5256294, at *2-4, *Anderson* is distinguishable in that the ALJ in that case supportably found, "after setting forth a detailed summary of the voluminous record[,]" that the claimant's condition was "essentially unchanged as measured by recorded observations over that period," and that "the raw medical evidence postdating the . . . nonexamining consultants' reports was essentially cumulative" of the evidence they had seen. *Id*. at *4.

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 10th day of February, 2020.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge